D. Craig Parry (#7274)
Stephen C. Mouritsen (#16523)
Parr Brown Gee & Loveless
101 South 200 East, Suite 700
Salt Lake City, Utah 84111
Telephone:  (801) 532-7840
Fax:  (801) 532-7750
Email:  cparry@parrbrown.com
          smouritsen@parrbrown.com

*Attorneys for Plaintiff*

---

**IN THE UNITED STATES DISTRICT COURT**

**DISTRICT OF UTAH, NORTHERN DIVISION**

| | |
|---|---|
| DAVIS LIVESTOCK, INC., a domestic Utah corporation<br><br>                    Plaintiff,<br><br>          vs.<br><br>ROYAL ATLANTIC HOLDINGS, LLC, a foreign Delaware limited liability company; and BRANDON WEBB, an individual;<br><br>                    Defendants. | Case No. _____<br><br>Judge:  _____<br><br>Magistrate Judge: _____<br><br>JURY DEMANDED |

Davis Livestock, Inc., by and through counsel, alleges and avers as follows:

**<u>Parties, Jurisdiction, and Venue</u>**

1.      Davis Livestock is a Utah corporation with its principal place of business in Cache County, Utah.

2.      Royal Atlantic Holdings, LLC ("Royal Atlantic") is a Delaware limited liability company with a principal place of business in Pennsylvania.

3.      Brandon Webb is a managing member of Royal Atlantic and a resident of Pennsylvania.

4.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, and venue is proper pursuant to 28 U.S.C. § 1391(b)(2) and (3).

5.      Defendants are subject to the jurisdiction of this Court pursuant to *Utah Code Ann.* § 78B-3-205 in that they transacted business in the State of Utah that gave rise to the claims alleged herein and caused tortious injury in Utah.

<u>**General Allegations**</u>

6.      Davis Livestock is a three-generation family owned and operated business in Cache County, Utah that has been breeding, selling and brokering diary heifers and other agricultural animals for 70 years.  Davis Livestock ships to farms throughout North America and the world.

7.      Todd Davis ("Davis") is the current President.

8.      Royal Atlantic holds itself out as a facilitator that partners with other companies to deliver livestock to customers throughout the world, purportedly offering assistance with supplying herd, pre-export isolations, export, shipping, import, and sales.

9.      On or about October 31, 2016, Webb contacted Davis Livestock representing that Royal Atlantic had secured a group of buyers of cattle in Turkey and that receipt of the livestock would take place at the port of Izmir, Turkey.  This statement was false when made, and Webb knew it to be false.

10.      Royal Atlantic and Webb sought financing of the herd from Davis Livestock.

11.      Davis Livestock and Royal Atlantic agreed that Davis Livestock would sell over 3000 head of cattle to Royal Atlantic on the following terms:  (1) Royal Atlantic would pay

Davis Livestock its costs and expenses in providing the cattle; (2) Additionally, Royal Atlantic would pay Davis Livestock $162,500 for the Holstein heifers and $350,000 for the Angus cattle; and (3) Payment in full would be provided to Davis Livestock before the cattle were boarded on the ship in the U.S.

12.     In reliance on these representation and this agreement, Davis Livestock acquired the cattle and paid an initial deposit on the cattle of $479,000. The total price Davis Livestock paid for the cattle was $3,897,673.57.

13.     By text message on December 2, 2016, and by emails dated December 5 and 8, 2016, Webb, on behalf of Royal Atlantic, confirmed that buyers in Turkey had been secured and that receipt of the livestock would take place at the port of Izmir, Turkey.

14.     These statements were false when made, and Webb knew them to be false.

15.     During September through December, 2016, Webb repeatedly represented to Davis Livestock that Royal Atlantic had the financial resources to facilitate this transaction and cover all necessary costs and fees. This statement was false when made, and Webb knew it to be false.

16.     Contrary to representations, Royal Atlantic and Webb did not have sufficient financial means to pay the necessary costs and fees of the transaction.

17.     On or about December 13, 2016, when the cattle were on route to Pennsylvania, Webb informed Davis Livestock that Royal Atlantic could not pay the deposit for the ship and demanded that Davis Livestock pay $100,000. Royal Atlantic promised that this amount would be reimbursed before the cattle were boarded on the ship. It was not.

18.     On or about January 3, 2017, Webb informed Davis Livestock that Royal Atlantic could not pay the quarantine deposit and demanded that Davis Livestock pay $100,000 for the

deposit.  Davis Livestock had no choice but to pay given the imminent departure of the ship that was scheduled between January 10 and 15.

19.     On or about January 5, 2017, without permission of Davis Livestock, Webb entered into a feed contract with Green Meadows Forage, LLC as a representative of Davis Livestock.

20.     On or about January 17, 2017, Davis Livestock became aware that quarantine deposit and invoice remain unpaid and that the $100,000 provided by Davis Livestock to Royal Atlantic for the quarantine deposit was not paid to the quarantine provider.

21.     By this time, Davis Livestock had incurred over $1.7 million in expenses on this transaction, including the acquisition cost of the cattle, all of which was at risk of being lost if the cattle were not processed through quarantine in time for boarding the ship.  Accordingly, Davis Livestock had no choice but to pay an additional $100,000 quarantine deposit and a $199,455.66 quarantine bill.

22.     In the same manner, Davis Livestock was also forced to pay feed and veterinary bills that Royal Atlantic was obligated to pay under the terms of the agreement.  Some of these bills were not brought to Davis Livestock's attention until after the cattle were aboard the ship and sailing to Turkey.

23.     The nature and estimated extent of these costs and expenses were known to Defendants in advance, and at the time when Royal Atlantic agreed to pay for all such expenses and at the time Defendants were representing to Davis Livestock that they had the financial wherewithal to fulfill their obligations under the agreement and the transaction.

24.     Davis Livestock provided the agreed-upon livestock to Royal Atlantic at the designated location and in all ways complied with the agreement between the parties.

25.     Royal Atlantic represented to Davis Livestock that there was a delay with the ship such that it would not depart until the end of January, 2017.  On or about January 31, 2017, Davis Livestock learned that Royal Atlantic had started allowing the cattle to be boarded, notwithstanding that Davis Livestock had not been paid as agreed.  Davis Livestock contacted the carrier and requested that all boarding stop; however, on February 1, 2017, the carrier informed Davis Livestock that Webb and Royal Atlantic were instructing that the loading should continue tomorrow.  When Davis contacted Webb, Webb falsely stated that it was all a misunderstanding.

26.     Contrary to the agreement, Royal Atlantic boarded the cattle onto the ship and shipped them to Turkey without making payment to Davis Livestock.  Royal Atlantic did this without having buyers.

27.     As the boarding continued, on February 2, Webb and Royal Atlantic falsely stated, knowing the statement to be false, that the outstanding balance owed to Davis Livestock would be "less than $100,000 by tomorrow."  Defendants further misrepresented that letters of credit and cash payments would be received on February 3.

28.     On February 3, Defendants knowingly falsely represented that cash payments were being processed and would be transferred to Davis Livestock that day, that letters of credit had been approved, and that all cash proceeds would be passed directly to Davis Livestock.

29.     These are other fraudulent statements and misrepresentations were made by Defendants to Davis Livestock for the purpose of causing Davis Livestock to rely on those statements and make further payments Davis Livestock was not contractually obligated to pay and to allowing boarding of the cattle before contractual payments were received.

30.     The cash and letters of credit were not sent as promised.

31.     The loading of the livestock proceeded on February 4, and the ship undocked on February 5.  In total, 3,165 head of cattle supplied by Davis Livestock were transported on the ship, livestock Royal Atlantic had agreed to purchase.

32.     On February 19, while the cattle were at sea, Defendants falsely represented to Davis Livestock that all original bills of lading required by the letters of credit had been released, except for the cash buyers whose bills of lading would be released by the following day. However, as Defendants knew, Defendants had not secured Turkish buyers, and neither the cash nor the letters of credit had been received.

33.     The ship carrying the cattle arrived in Izmir on or about February 26, 2017.  By March 2, 2017, approximately 450 head of cattle could not be discharged from the ship due to the absence of buyers.  Webb contacted Davis Livestock, stating that if Davis Livestock did not pay the shipping company an additional $230,000 to transport the remaining 450 head of cattle to the port of Abhazya, the cattle would be released to Turkish customs and slaughtered.

34.     On or about March 16 and April 19, 2017, Defendants represented that the 450 head of cattle had been sold for cash, but none of the proceeds were ever transferred to Davis Livestock.

35.     In total, Davis Livestock incurred over $4.9 million in expenses for the livestock that Royal Atlantic was obligated to reimburse under the agreement and pursuant to Defendants' representations.  While Royal Atlantic has made some payments to Davis Livestock for these expenses, approximately $1 million remains outstanding.  Additionally, Royal Atlantic never paid Davis Livestock $162,500 for the Holstein heifers and $350,000 for the Angus cattle.

36.     On June 7, 2017, a representative of Baladna Dairy Farms in Qatar contacted Davis Livestock and inquired about purchasing several thousand head of Holstein heifers.  Davis Livestock agreed to supply the cattle.

37.     On May 19, 2017, Defendants had represented to Davis Livestock that they would share all profits on future deals with Davis Livestock until Davis Livestock was made whole for the Turkey transaction.  Although Davis Livestock could have fulfilled this order and shipped the cattle without the involvement of Royal Atlantic, in reliance on Defendants' representations, Davis Livestock informed Defendants of the opportunity and invited them to participate, as a way to generate money that Defendants could then use to pay monies owed to Davis Livestock.

38.     Following this introduction, Defendants communicated with Baladna about the transaction.

39.     Defendants represented to Davis Livestock that it would receive at least $135 per head from the Qatar transaction.

40.     On July 3, 2017, Defendants affirmed to Davis Livestock the amounts owing to Davis Livestock for the Turkey transaction and reaffirmed their commitment to pay the amounts in full.

41.     On July 7, 2017, Defendants informed Davis Livestock that Qatari customs authorities were permitting Defendants to draft the import protocol. On July 12, 2017, Defendants Webb forwarded Davis Livestock a link to money.cnn.com, featuring the anticipated Qatari transaction. On July 13, 2017, Defendants informed Davis Livestock of the scheduled transportation with Qatar Airways, setting forth the shipment of the cattle from the United States of America to Qatar.

42.     On July 13, 2017, to avoid a repeat of the Turkey transaction, Davis stated "I would like the funds sent directly to my account. I want to know exactly what is going on every step of the way. I brought this deal to you and want to make sure you make money as well but I need to control the purse strings on this one . . ."

43.     On that same day, however, Defendants for the first time asserted that Davis Livestock had no involvement in or right to the proceeds of the Qatar transaction.

44.     Unbeknownst to Davis Livestock, and contrary to Defendants' representations, Royal Atlantic entered into an agreement with Baladna for the delivery of the livestock on July 7, 2017.  This contract was not disclosed to Davis Livestock until August 17, 2017.

45.     In the course of negotiating and working with Baladna and other parties involved in the Qatar transaction, Defendants misrepresented that they were acting for and on behalf of Davis Livestock and misrepresenting their affiliation with Davis Livestock.  This was done to induce Baladna to entering into the agreement with Royal Atlantic to the exclusion of Davis Livestock.

46.     Pursuant to the relationship with Baladna, Royal Atlantic has provided 2,000 Holstein heifers to Baladna at a price of $2,395 per head.  On information and belief, Baladna has ordered an additional 6,600 head from Royal Atlantic.

47.     When confronted by those in the industry with knowledge of the monies owing from Defendants to Davis Livestock, Webb has replied that, "He [Davis] cannot touch me."

## Count One:  Fraud (Against Both Defendants)

48.     Davis Livestock incorporates by this reference the allegations in paragraphs 1-46 as if fully set forth in this Count.

49.     Defendants made numerous statements to Davis Livestock that were false, including those alleged in paragraphs 13, 14, 16, 19, 24, 26, 31, 38, and 44.

50.     When Defendants made these representations, Defendants knew they were false.

51.     Defendants made these fraudulent statements to induce Davis Livestock to provide additional monies for the Turkey transaction, allow the livestock to be shipped, and provide additional business opportunities for Defendants, among other improper reasons.

52.     Davis Livestock reasonably relied upon those representations in, among other things, agreeing to send additional monies to pay expenses in the Turkey transaction, not stopping shipment of the cattle, providing further business opportunities to Defendants.

53.     As a result of this fraud, Davis Livestock has suffered damages in an amount to be determined at trial, including without limitation, their actual and consequential damages, punitive damages, interest, attorney's fees, costs, and such other and further relief as may be just and equitable under the circumstances.

## Count Two:  Breach of Contract (Against Royal Atlantic)

54.     Davis Livestock incorporates by this reference the allegations in paragraphs 1-46 as if fully set forth in this Count.

55.     The agreement set forth in paragraph 11 was a valid and binding agreement between Davis Livestock and Royal Atlantic.

56.     Davis Livestock performed all of its obligations under that agreement.

57.     Royal Atlantic breached that agreement by, among other things, failing to pay to Davis Livestock amounts owing under the agreement and boarding the cattle on the ship before Davis Livestock was paid.

58.     As a result of these breaches, Davis Livestock has suffered damages in an amount to be determined at trial, including without limitation, its actual and consequential damages, interest, attorney's fees, costs, and such other and further relief as may be just and equitable under the circumstances.

**Count Three:  Breach of Implied Covenant of Good Faith and Fair Dealing (Against Royal Atlantic)**

59.     Davis Livestock incorporates by this reference the allegations in paragraphs 1-46 as if fully set forth in this Count.

60.     Under the agreement set forth in paragraph 11, Royal Atlantic owed Davis Livestock a duty of good faith and fair dealing.

61.     Royal Atlantic's failing to pay to Davis Livestock amounts owing under the agreement, boarding the cattle on the ship before Davis Livestock was paid, and making misrepresentations set forth herein injured Davis Livestock's right to enjoy the benefits of the agreement.

62.     As a result of Royal Atlantic's breach of this covenant, Davis Livestock has suffered damages in an amount to be determined at trial, including without limitation, its actual and consequential damages, interest, attorney's fees, costs, and such other and further relief as may be just and equitable under the circumstances.

**Count Four:  Unjust Enrichment Turkey Transaction (Against Both Defendants)**

63.     Davis Livestock incorporates by this reference the allegations in paragraphs 1-46 as if fully set forth in this Count.

64.     In the event that the agreement set forth in paragraph 11 is found unenforceable for any reason, Davis Livestock pleads in the alternative as follows:

65.     Davis Livestock paid the additional expenses, including for veterinary services, feed, quarantine, vessel fees, based on Defendants' misrepresentations as set forth herein.

66.     Defendants requested that Davis Livestock pay these expenses, and these payments have been of great benefit to Defendants, including but not limited to all profits realized by Defendants on the Turkey transaction and the expense payments themselves.

67.     In light of the misrepresentations, it would be inequitable for Defendants to retain the benefits they received as a result of the misrepresentations.

68.     As a result of Defendants' unjust enrichment, Davis Livestock has suffered damages in an amount to be determined at trial, including without limitation, its actual and consequential damages, interest, attorney's fees, costs, and such other and further relief as may be just and equitable under the circumstances.

**Count Five:  Promissory Estoppel (Against Both Defendants)**

69.     Davis Livestock incorporates by this reference the allegations in paragraphs 1-46 as if fully set forth in this Count.

70.     In the event that the agreement set forth in paragraph 11 is found unenforceable for any reason, Davis Livestock pleads in the alternative as follows:

71.     Davis Livestock agreed to pay for additional expenses for the Turkey transaction and did not stop the cattle from being boarded on the ship and transported to Turkey based on

Defendants' representations that Davis Livestock would be immediately reimbursed for the expenses, that Defendants had lined up buyers for the cattle, that Davis Livestock would realize all its contracted for profits, and that without additional payments, certain of the cattle would be lost.

72.     Defendants have refused to honor these representations and promises.

73.     Defendants' conduct has caused and is continuing to cause Davis Livestock to suffer damages in an amount to be determined at trial, including without limitation, its actual and consequential damages, interest, attorney's fees, costs, and such other and further relief as may be just and equitable under the circumstances.

## Count Six:  Conversion (Against Both Defendants)

74.     Davis Livestock incorporates by this reference the allegations in paragraphs 1-46 as if fully set forth in this Count.

75.     Defendants have received payments from customers that belonged to Davis Livestock.  Defendants have refused and continue to refuse to remit those monies to Davis Livestock.

76.     As a result of Defendants' conversion of Davis Livestock's monies, Davis Livestock has suffered damages in an amount to be determined at trial, including without limitation, its actual and consequential damages, interest, attorney's fees, costs, and such other and further relief as may be just and equitable under the circumstances.

## Count Seven:  Tortious Interference with Economic Relations (Against Both Defendants)

77.     Davis Livestock incorporates by this reference the allegations in paragraphs 1-46 as if fully set forth in this Count.

12

78.     Davis Livestock had a business relationship with Baladna about which Defendants knew.

79.     Defendants intentionally interfered with that relationship by causing Baladna to enter into an agreement directly with Royal Atlantic for the supply of cattle.

80.     Defendants did this by making fraudulent statements and misrepresentations, including fraudulently characterizing the relationship between Davis Livestock and Defendants.

81.     Defendants fraudulently concealed the agreement with Baladna from Davis Livestock until such time as Davis Livestock was precluded from continuing in the economic relationship with Baladna.

82.     Defendants' conduct has caused and is continuing to cause Davis Livestock to suffer damages in an amount to be determined at trial, including without limitation, its actual and consequential damages, punitive damages, interest, attorney's fees, costs, and such other and further relief as may be just and equitable under the circumstances.

### Count Eight:  Receivership (Against Royal Atlantic)

83.     Davis Livestock incorporates by this reference the allegations in paragraphs 1-46 as if fully set forth in this Count.

84.     Defendants continue to fail to remit payments owed to Davis Livestock.

85.     On information and belief, Defendants continue to use those monies for their own purposes and without the consent of Davis Livestock.

86.     On information and belief, Davis Livestock's funds being held by Defendants are in danger of being dissipated and will not be enough to satisfy a judgment against Royal Atlantic.

87.     Defendants have ongoing transactions with foreign entities such that it is easy for Defendants to move monies beyond the reach of Davis Livestock and this Court.

88.     The Court should therefore appoint a receiver for Royal Atlantic to preserve its assets and Davis Livestock's monies held by Royal Atlantic.

### Count Nine:  Accounting (Against Both Defendants)

89.     Davis Livestock incorporates by this reference the allegations in paragraphs 1-46, and 83-86 as if fully set forth in this Count.

90.     The Court should order an accounting of Royal Atlantic's assets and monies, including any assets and monies transferred to Webb.

91.     Specifically, Davis Livestock is entitled to an accounting of the following: (1) all monies received in connection with the Turkey and Qatar transactions; (2) all expenses paid in connection with the Turkey and Qatar transactions; (3) all payments made from Royal Atlantic to any owner; and (4) the disposition of all funds provided by Davis Livestock.

### Count Ten:  Constructive Trust (Against Both Defendants)

92.     Davis Livestock incorporates by this reference the allegations in paragraphs 1-46 as if fully set forth in this Count.

93.     Defendants owed a duty to Davis Livestock to properly account for and disburse the monies paid by Davis Livestock to Defendants for third-party services.

94.     Defendants failed to do so by, among other things, failing to use the monies to pay the expenses for which the monies were advanced to Defendants.

95.     Defendants consciously engaged in the wrongful acts set forth herein.

96.     The Court should impose a constructive trust over all the monies and assets that were wrongfully diverted, including all monies paid by Davis Livestock and the proceeds from the Turkey transaction.

**Count Eleven:  Unjust Enrichment Qatar Transaction (Against Both Defendants)**

97.     Davis Livestock incorporates by this reference the allegations in paragraphs 1-46 as if fully set forth in this Count.

98.     Davis Livestock provided Defendants and introduction to Baladna based on Defendants' misrepresentations as set forth herein.

99.     Defendants misrepresented their relationship with Davis Livestock to Baladna and other entities and persons in order to secure the profits of the Qatar transaction for itself.

100.    Defendants have realized significant profits from the Qatar transaction.

101.    In light of the misrepresentations, it would be inequitable for Defendants to retain the benefits they received as a result of the misrepresentations.

102.    As a result of Defendants' unjust enrichment, Davis Livestock has suffered damages in an amount to be determined at trial, including without limitation, its actual and consequential damages, interest, attorney's fees, costs, and such other and further relief as may be just and equitable under the circumstances.

**PRAYER FOR RELIEF**

WHEREFORE, Davis Livestock respectfully requests entry of judgment as follows:

A.      That the Court find that Defendants are liable for fraud as alleged above and award to Davis Livestock its actual and consequential damages, punitive damages, interest, attorneys' fees, costs, and such other and further relief as may be just under the circumstances;

B.      That the Court find that Royal Atlantic is liable for breach of contract as alleged above and award Davis Livestock its actual and consequential damages, interest, attorneys' fees, costs, and such other and further relief as may be just under the circumstances;

C.      That the Court find that Royal Atlantic is liable for breach of the implied covenant of good faith and fair dealing as alleged above and award Davis Livestock its actual and consequential damages, interest, attorneys' fees, costs, and such other and further relief as may be just under the circumstances;

D.      That the Court find that Royal Atlantic has been unjustly enriched as alleged above and award Davis Livestock the value of the benefit conferred by Davis Livestock on Defendants, and such other and further relief as may be just under the circumstances;

E.      That the Court find that Defendants tortuously interfered with Davis Livestock's economic relationship with Baladna and award Davis Livestock its actual and consequential damages incurred as a result of the loss of that relationship as well as Defendants' unjust enrichment;

F.      That the Court find that Defendants have committed conversion as alleged above and award Davis Livestock its actual and consequential damages, interest, attorneys' fees, costs, and such other and further relief as may be just under the circumstances;

G.      That Defendants be ordered to account for the following: (1) all monies received in connection with the Turkey and Qatar transactions; (2) all expenses paid in connection with the Turkey and Qatar transactions; (3) all payments made from Royal Atlantic to any owner; and (4) the disposition of all funds provided by Davis Livestock.

H.      That the Court impose a constructive trust in favor of Davis Livestock over all monies and assets wrongfully diverted and/or held by Defendants.

I.      That the Court enjoin Defendants from withdrawing, dissipating, encumbering, spending, or otherwise using any of its assets.

J.      That the Court appoint a receiver for Royal Atlantic.

K.      That Defendants be ordered to pay all costs and Davis Livestock' legal fees associated with this action; and

L.      That the Court grant to the Davis Livestock such other and further relief as may be deemed just under the circumstances.

Davis Livestock hereby demands a trial by jury on all issues so triable.

DATED this 9th day of February, 2018.

PARR BROWN GEE & LOVELESS

By:     /s/ D. Craig Parry
        D. Craig Parry
        Stephen C. Mouritsen
        *Attorneys for Plaintiff*

Plaintiffs' address:

1000 N. West Street, Suite 1200
Suite 1200
Wilmington, DE 19801