D. Craig Parry (#7274)
Stephen C. Mouritsen (#16523)
Parr Brown Gee & Loveless
101 South 200 East, Suite 700
Salt Lake City, Utah 84111
Telephone: (801) 532-7840
Fax: (801) 532-7750
Email: cparry@parrbrown.com
　　　　smouritsen@parrbrown.com

*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**

**DISTRICT OF UTAH, NORTHERN DIVISION**

| | |
|---|---|
| DAVIS LIVESTOCK, INC., a domestic Utah corporation<br><br>　　　　　　　　　　Plaintiff,<br><br>vs.<br><br>ROYAL ATLANTIC HOLDINGS, LLC, a foreign Delaware limited liability company; and BRANDON WEBB, an individual;<br><br>　　　　　　　　　　Defendants. | **EX PARTE MOTION FOR A WRIT OF ATTACHMENT PURSUANT TO UTAH R. CIV. P. 64A**<br><br>Case No. 1:18-cv-00022-EJF<br><br>Judge: _____<br><br>Magistrate Judge: Evelyn J. Furse |

Pursuant to Rule 64 of the Federal Rules of Civil Procedure and Rule 64A and 64C of the Utah Rules of Civil Procedure, Plaintiff, Davis Livestock, Inc. ("Davis Livestock"), respectfully submits this motion for a writ of attachment (the "Motion") against defendants, Royal Atlantic Holdings, LLC ("Royal Atlantic"), and Brandon Webb, (collectively, the "Defendants") enjoining Defendants from withdrawing, dissipating, encumbering, spending, or otherwise using any of the assets described in the motion.

1

## RELIEF SOUGHT

Defendants have made numerous false representations to Plaintiff, Davis Livestock. These false representations have resulted in millions of dollars of payments to Defendants, a large bulk of which remains unaccounted for. Defendants have continued to refuse to remit the payments that are owed to Davis Livestock. In light of the global nature of these transactions, Defendants could easily move funds beyond the reach of Davis Livestock, preventing any recovery.

Davis Livestock, therefore, seeks an *ex parte* writ of attachment preventing Defendants from withdrawing, dissipating, encumbering, spending, or otherwise using any of the assets referenced herein. Specifically, Davis Livestock seeks to attach Royal Atlantic's Wells Fargo Bank Account.[1] Davis Livestock also seeks to attach any letters of credit held in the name of Royal Atlantic by Wells Fargo Bank, N.A.[2] In addition, Davis Livestock seeks to attach by prejudgment writ any and all livestock, receivables, cash, security documents, letters of credit, and other financial instruments held by or in the name of Royal Atlantic Holdings, LLC.[3] The property sought to be attached by prejudgment writ further includes all Royal Atlantic assets transferred to Brandon Webb from and after December 1, 2016.[4]

## STATEMENT OF FACTS

The facts supporting this Motion are set forth in the Affidavit of Todd Davis, filed contemporaneously with this Motion. These facts are incorporated herein by reference.

---

[1] Well's Fargo Bank N.A., 420 Montgomery Street, San Francisco, CA 94105 and at a Philadelphia, Pennsylvania branch, account number xxx xxx 5704 (redacted for confidentiality).

[2] Well's Fargo Bank N.A., International Trade Operations, 1525 West WT Harris Blvd., Charlotte, North Carolina 28262.

[3] Royal Atlantic Holdings, LLC has a registered address of 1000 N. West Street, Suite 1200, Wilmington, Delaware 19801, phone: (717) 542-6985, with Brandon Webb and Murat Berk as members.

[4] With the exception of lawful and legitimate earnings, as defined in Utah R. Civ. P. 64(a)(5).

## ARGUMENT

A writ of attachment issued by a federal court must be issued pursuant to the law of the forum state.[5] Pursuant to Utah R. Civ. P. 64A(a), a plaintiff seeking a prejudgment writ of attachment must show: (1) that the property is not earnings and not exempt from execution; and (2) that the writ is not sought to hinder, delay or defraud a creditor of the defendant; and (3) a substantial likelihood that the plaintiff will prevail on the merits of the underlying claim. Utah R. Civ. P. 64A(c). In addition, a plaintiff must demonstrate one of seven additional requirements, including any of the following: "the defendant has assigned, disposed of or concealed, or is about to assign, dispose of or conceal, the property with intent to defraud creditors," or "the defendant has fraudulently incurred the obligation that is the subject of the action" or there is "probable cause of losing the remedy unless the court issues the writ."[6] Pursuant to Rule 64A, *ex parte* relief is appropriate in circumstances in which "irreparable injury to the plaintiff before the defendant can be heard" would occur. Each of these elements is satisfied in the present case, and an *ex parte* writ of attachment is proper.[7]

### I. The Property at Issue Is Not Earnings and Not Exempt from Execution.

Writs of attachment are available where "the property is not earnings and not exempt from execution." Utah R. Civ. P. 64A(c)(i). The Rule defines "earnings" as "compensation, however denominated, paid or payable to an individual for personal services." Utah R. Civ. P. 64(a)(5).

The property Davis Livestock seeks to attach are the proceeds from the international sale of cattle, as well as the reimbursement of fees ostensibly incurred for veterinary services, feed,

---

[5] *See* Fed. R. Civ. P. 64(a) ("At the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment.").

[6] Utah R. Civ. P. 64A(c)(5), (7), and (10).

[7] *See* Utah R. Civ. P. 64A(i). In addition, Utah R. Civ. P. 64C requires that the action be "against a defendant who is not a resident of this state," *see* Rule 64C(b)(2)(i), and that the "payment of the claim has not been secured by a lien upon property in this state." *Id.* at (b)(3). Both requirements are met in the present case.

3

quarantine, and vessel fees. Davis Aff. ¶¶ 16-21. None of the funds Davis Livestock seeks to recover from Defendants constitutes "earnings."

**II.     The Writ Is Not Sought to Hinder, Delay or Defraud a Creditor of Defendants.**

Davis Livestock is not aware of any other creditor of Defendants. There is no evidence that any of the funds on which attachment is sought are earmarked to pay any other creditor of Defendant or that any other creditor has any interest in these funds. Davis Livestock is not seeking the writ for the purpose of hindering or delaying any other creditor.

**III.    Davis Livestock is Likely to Succeed on the Merits of Its Claims.**

Davis Livestock is entitled to a writ of attachment because it is likely to succeed on the merits of its claims against Defendants. While Davis Livestock is likely to prevail on each of its claims, for the sake of brevity, Plaintiff will address only a few of the claims below:

**A.     Count 1: Fraud (Against Both Defendants).**

Defendants made numerous false statements to Davis Livestock that Davis Livestock relied on to its detriment. A plaintiff claiming fraudulent misrepresentation must establish

> (1) that a representation was made (2) concerning a presently existing material fact (3) which was false and (4) which the representor either (a) knew to be false or (b) made recklessly, knowing that there was insufficient knowledge upon which to base such a representation, (5) for the purpose of inducing the other party to act upon it and (6) that the other party, acting reasonably and in ignorance of its falsity, (7) did in fact rely upon it (8) and was thereby induced to act (9) to that party's injury and damage.[8]

Each of these elements is present in the current case. Defendants made numerous false statements to Davis Livestock in order to induce Davis Livestock to do business with Defendants and to make payments to Defendants that Defendants had no intention of paying back.

---

[8] *See Cardon v. Jean Brown Research*, 2014 UT App 35, ¶ 6, 327 P.3d 22 (2014) (citing *State v. Apotex Corp.*, 2012 UT 36, ¶ 58, 282 P.3d 66).

For example, Webb repeatedly represented that Royal Atlantic had the financial resources to cover all of the necessary costs and fees associated with the Turkey transaction, when it is clear that Royal Atlantic lacked these financial resources. Davis Aff. ¶¶ 9-10. Defendants also misrepresented that they had secured buyers in Turkey. *Id*. ¶¶ 4, 20.

In addition, Webb sought a deposit of $100,000 from Davis Livestock to pay for a ship to Turkey. *Id*. ¶ 11. Webb promised that the $100,000 he obtained, ostensibly as a deposit for the ship to Turkey, would be reimbursed, but the reimbursement was never provided. *Id.* Webb obtained $100,000 for veterinary and quarantine fees from Davis Livestock, though Davis Livestock later learned that these fees were never paid. *Id.* ¶¶ 12-14. Similarly, on February 2, Webb and Royal Atlantic falsely stated that the outstanding balance owed to Davis Livestock would be "less than $100,000 by tomorrow," *id.* ¶ 21, but no payments were made at that time. In addition, Defendants falsely represented to Davis Livestock that all original bills of lading required by the letters of credit had been released, except for the cash buyers whose bills of lading would be released by the following day. *Id.* ¶ 25. As Defendants knew, Defendants had not secured Turkish buyers, and neither the cash nor the letters of credit had been received. *Id.* Defendants knew that all of these statements were false when they made them. Davis Livestock reasonably relied on these statements in their decision to do business with Defendants and proffer the funds requested by Defendants. Defendants have failed to reimburse these fraudulently obtained funds.

### B. Count II: Breach of Contract (Against Royal Atlantic)

Davis Livestock is likely to prevail on its claim for breach of contract because Royal Atlantic has failed to perform its obligations under the contract. A claim for breach of contract

requires "(1) a contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other party, and (4) damages."[9]

Davis Livestock and Royal Atlantic entered into a valid, enforceable agreement whereby Davis Livestock agreed to sell over 3000 head of cattle to Royal Atlantic, and Royal Atlantic agreed to pay Davis Livestock its costs and expenses in providing the cattle. Davis Aff. ¶ 6. Royal Atlantic also agreed to pay Davis Livestock $162,500 for the Holstein heifers and $350,000 for the Angus cattle, in full *before* the cattle were boarded on the ship in the United States. *Id.* Royal Atlantic breached this agreement by failing to pay Davis Livestock the agreed amounts and by boarding the cattle before paying Davis Livestock. *Id.* ¶¶ 19-28.

### C. Count VI: Conversion (Against Both Defendants)

Defendants continue to exercise control over the funds provided by Davis Livestock inconsistently with Davis Livestock's rights. To set forth a claim for conversion, a plaintiff must show an "an intent to exercise dominion or control over goods inconsistent with the owner's rights." *Alta Indus. Ltd. v. Hurst*, 846 P.2d 1282, 1290 n. 18 (Utah 1993) (quoting *Allred v. Hinkley*, 328 P.2d 726, 728 (1958) (citations omitted)). Where the subject property is a sum of money, conversion claims must show the "date, amount, and the person or entity to which the money was transferred."[10]

There is no serious question that Defendants have improperly received and retained payments from Davis Livestock. On December 13, 2016, Davis Livestock provided $100,000 to Royal Atlantic for a shipping deposit subject to a promise that the funds would be reimbursed. Davis Aff. ¶ 11. No reimbursement was received. *Id.* On January 3, 2017, Davis Livestock further

---

[9] *America West Bank Members, LC v. State*, 2014 UT 49, ¶ 342 P. 3d 224 (quoting *Bair v. Axiom Design*, LLC, 2001 UT 20, ¶ 14, 20 P.3d 388).

[10] *Zero Down Supply Chain Solutions, Inc. v. Global Transp. Solutions, Inc.*, No. 07–CV–400 TC, 2008 WL 4642975, at *11 (Oct. 17, 2008).

provided $100,000 to Royal Atlantic for a quarantine fee that Davis Livestock confirmed was never paid to the provider and was not reimbursed. *Id.* ¶ 12, 14. Defendants continue to exercise control over these funds inconsistent with Davis Livestock's rights.

### D. Counts IV, V, and XI: Unjust Enrichment and Promissory Estoppel.

Even in the (unlikely) event that the contract referenced in Section III.B were found to be unenforceable, Defendants would be liable to Davis Livestock for unjust enrichment and promissory estoppel.

Absent an enforceable contract, a plaintiff may recover under the equitable doctrine of unjust enrichment. *Jeffs v. Stubbs*, 970 P.2d 1234, 1245 (Utah 1996) ("Unjust enrichment law developed to remedy injustice when other areas of the law could not."). To establish a claim of unjust enrichment, a plaintiff must establish: (1) a benefit conferred on one person by another; (2) an appreciation or knowledge by the conferee of the benefit; and (3) the acceptance or retention by the conferee of the benefit under such circumstances as to make it inequitable for the conferee to retain the benefit without payment of its value. *Espinoza v. Gold Cross Servs., Inc.*, 2010 UT App 151, ¶ 10, 234 P.3d 156 (quotations and citations omitted). Moreover, to make out a case of promissory estoppel necessitates a showing

> (1) The plaintiff acted with prudence and in reasonable reliance on a promise made by the defendant; (2) the defendant knew that the plaintiff had relied on the promise which the defendant should reasonably expect to induce action or forbearance on the part of the plaintiff or a third person; (3) the defendant was aware of all material facts; and (4) the plaintiff relied on the promise and the reliance resulted in a loss to the plaintiff.[11]

With respect to the Turkey transaction, as a result of Defendants repeated misrepresentations, Davis Livestock paid additional expenses, including for veterinary services,

---

[11] *Youngblood v. Auto-Owners Ins. Co.*, 2007 UT 28, ¶ 16, 158 P. 3d 1088 (quoting 28 Am. Jur. 2d *Estoppel and Waiver* § 35 (2004)).

feed, quarantine, and vessel fees. Davis Aff. ¶¶ 16-21. As noted above, Davis Livestock paid $100,000 to Royal Atlantic for a shipping deposit with a promise that the funds would be reimbursed, though no reimbursement was received. *Id.* at ¶ 11. Davis Livestock also provided $100,000 to Royal Atlantic for a quarantine fee that Davis Livestock confirmed was never paid. *Id.* ¶ 12, 14. The retention of these payments by Royal Atlantic would be highly inequitable to Davis Livestock.

With respect to the Qatar transaction, Defendants knew that Davis Livestock had pre-existing business relationship with Baladna. *Id.* at ¶¶ 29, 30. Defendants nevertheless entered into an agreement with Baladna for the supply of cattle, by means of numerous fraudulent statements and misrepresentations that included fraudulently mischaracterizing the relationship between Defendants and Davis Livestock. *Id.* at ¶¶ 29-40. Because Defendants fraudulently mischaracterized their relationship with Davis Livestock in order to secure an agreement with Baladna, allowing Defendants to retain the proceeds from that transaction would be inequitable.

Finally, with respect to promissory estoppel, Davis Livestock relied on Defendants' representations that numerous additional payments that were not part of the original contract for the Turkey transaction were necessary and would be reimbursed to Defendants. Defendants were never reimbursed. *Id.* at ¶¶ 9-17. Davis Livestock's relied on Defendants' false statements and has been harmed as a result.

## IV. The Facts Support a Number of Bases for the Grant of a Writ of Attachment.

The grant of a prejudgment writ of attachment requires that the plaintiff establish "at least one of the requirements listed in subsections (c)(4) through (c)(10)" of Rule 64A. At least three of these requirements are met in the present case, any one of which justifies the relief sought: First, a writ of attachment is appropriate where "the defendant has assigned, disposed of or concealed, or is about to assign, dispose of or conceal, the property with intent to defraud creditors." Utah R.

Civ. P. 64A(c)(5). As a result of Defendants' repeated misrepresentations, Davis Livestock made numerous payments to Defendants' ostensibly for veterinary services, feed, quarantine, and vessel fees, Davis Aff. ¶¶ 16-28, under the false pretense that Defendants' payments would be used for these purposes and would be reimbursed to Davis Livestock. Webb specifically represented that $100,000 was required to pay quarantine fees. *Id.* ¶ 12. However, Davis Livestock later confirmed that not only had the $100,000 never been reimbursed, but the quarantine provider has never been paid. *Id.* ¶ 14. The disappearance of the quarantine deposit and Defendants' failure to reimburse any of the additional payments provided by Davis Livestock, together with the international nature of the transactions makes clear that without the grant of an *ex parte* writ of attachment Defendants may "assign, dispose of or conceal," the funds owed to Davis Livestock. Indeed, it would be easy for Defendants to do so.

Second, a writ of attachment is appropriate where "the defendant has fraudulently incurred the obligation that is the subject of the action." Utah R. Civ. P. 64A(c)(7). As set forth in Section III.A above, Defendants made numerous and repeated fraudulent statements to Davis Livestock to induce Davis Livestock to make payments that were never reimbursed.

Finally, a writ of attachment is appropriate where there is "probable cause of losing the remedy unless the court issues the writ." Utah R. Civ. P. 64A(c)(10). In this case, there are numerous documented instances in which Defendants fraudulently misstated the basis for their request for payments and the purpose for which those payments would be used (*see* Section III.A above). Davis Livestock confirmed, for example, that the $100,000 in quarantine fees was never reimbursed and never paid to the quarantine provider. Such instances make clear that Davis Livestock is in imminent danger of losing any possible recovery from Defendants unless this Court acts quickly to enjoin Defendants from dissipating what remains of the assets.

## V. Without an Ex Parte Writ of Attachment Plaintiff Will be Irreparably Harmed.

*Ex parte* relief is appropriate in the present case because without an immediate grant of a writ of attachment before Defendants can be heard, Davis Livestock is in imminent danger of suffering irreparable harm. Utah Rule of Civil Procedure 64A(i).

Defendants have repeatedly and fraudulently obtained payments from Davis Livestock and applied these funds to purposes contrary to their representations to Davis Livestock. If given the opportunity and sufficient warning, Defendants would be free to withdraw, spend, or remove any funds due to Davis Livestock. Indeed, the international nature of the transactions described above would make it easy for Defendants to move funds beyond the reach of Davis Livestock. Thus, there is a significant danger that Defendants would be irreparably harmed if the writ of attachment did not issue before the Defendants can be heard.[12] Because Defendants are in a position to easily remove or dissipate whatever remains of the assets obtained from Davis Livestock, an *ex parte* writ of prejudgment attachment is necessarily to prevent irreparable harm to Davis Livestock.

## **CONCLUSION**

For the reasons set forth above, Davis Livestock's *ex parte* motion for prejudgment attachment should be granted.

---

[12] *Tri–State Generation and Transmission Ass'n, Inc. v. Shoshone River Power, Inc.*, 805 F.2d 351, 355 (10th Cir.1986) (inability to collect damages due to dissipation constitutes irreparable harm). *See also Bad Ass Coffee Co. of Hawaii, Inc. v. JH Nterprises, LLC*, 636 F. Supp.2d 1237, 1250 (D. Utah 2009) (difficulty in collecting damages constitutes irreparable harm).

DATED this 9th day of February 2018.

**PARR BROWN GEE & LOVELESS**

*/s/ D. Craig Parry*
D. Craig Parry
PARR BROWN GEE & LOVELESS, P.C.

Attorneys for Defendants